## Commonwealth v. Mattis

*James B. Yelovich*, district attorney, for the Commonwealth.
*Walter C. Pruchnik, Jr.*, for defendant.

SHAULIS, *P.J.*, May 9, 1985—This court now has before it the trial of Michael George Mattis for violations of section 3731(a)(1) and (4) of the Pennsylvania Vehicle Code, 75 Pa.C.S. §3731(a)(1) and (4), relating to his alleged operation of a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving and/or while the amount of alcohol by weight in his blood was 0.10 percent or greater.

## FACTS

On December 2, 1984, sometime between 3:30 a.m. and 4:00 a.m., defendant was the operator of a motor vehicle which crashed into an electric pole located on a 90 degree turn on Camp Drive in Paint Township. Prior to the accident, defendant drank three 12-ounce beers: one beer at approximately 1:30 a.m. and two more beers shortly before the accident between 3:15 a.m. and 3:30 a.m. Defendant had started working the night shift at the Johnstown Tribune Democrat the week before the accident, and had worked the previous night from 12:30 a.m. to 9:00 a.m. on December 1, 1984. Defendant then slept about five hours, attending school that evening and remaining awake until the time of the accident. Defendant agrees with the Common-

wealth that he must have fallen asleep at the wheel shortly before hitting the pole.

Chief Theodore R. Hegadus of the Paint Township Police Department arrived at the scene of the accident at approximately 4:25 a.m., about a half hour to an hour after the accident occurred. During the course of his investigation, the officer noted that defendant was alert, although defendant's eyes were bloodshot and he had a moderate odor of alcoholic beverage on his breath. In addition, the officer thought that defendant swayed a bit when he walked. It was later determined, however, that defendant had slightly injured one of his knees in the accident.

Defendant offered to take a breathalyzer test; but instead a blood sample was taken at the hospital where defendant was treated at approximately 6:09 a.m. Later analysis of that blood sample demonstrated that at the time the sample was drawn defendant had a blood alcohol content of 0.11 percent. Defendant was then charged with three violations of the Pennsylvania Vehicle Code, 75 Pa.C.S. §3731, 3714, and 3361, relating to driving under the influence and summary charges of reckless driving and driving at an unsafe speed.

The summary charges were dismissed at the preliminary hearing, and on March 11, 1985, defendant pled not guilty to the remaining charge of driving under the influence. Defendant's motion to suppress the blood test was denied by a memorandum and order of this court per Coffroth, P.J. dated March 18, 1985 [Mattis (No. 1), 44 Somerset L. J. 236. In this memorandum, President Judge Coffroth noted that the delay in obtaining a blood sample, while not grounds for suppression, would go to the weight of the evidence presenting a question for the trier of fact. Defendant was tried on the

charge of driving under the influence in a nonjury trial before this court on May 1, 1985.

## DISCUSSION

After carefully reviewing the testimony presented at defendant's trial, we are convinced that the evidence does not support a verdict of guilty under either subsection (a)(1) or under (a)(4) of Vehicle Code §3731, 75 Pa.C.S. Under both subsections, it is essential that the prosecution demonstrate beyond a reasonable doubt that defendant was under the influence of alcohol to a degree which rendered him incapable of safe driving or that he had a blood alcohol content greater than 0.10 percent at the time that he was operating or in actual physical control of the movement of his motor vehicle. We find, however, that the Commonwealth has failed to carry its burden on this point. Thus, defendant must be found innocent of the charge of driving under the influence.

This court has long recognized the relevance of the duration of the absorption period, the time when the peak of influence is reached, and the duration of the clearance period, in relation to the times of driving and consumption of alcoholic beverage. Commonwealth v. Gillingham, 43 Somerset L. J. 67, 32 D.&C.3d 37 (1984); Commonwealth v. King, 32 Somerset L. J. 81 (1976); Commonwealth v. Supanick, 26 Somerset L. J. 367 (1971). Thus, in Commonwealth v. King, supra, we found that there was insufficient evidence to prove beyond a reasonable doubt that defendant was under the influence when driving where defendant was first observed more than two hours after driving and had a breathalyzer test result of 0.15 percent more than an hour later.

In the case now under consideration, Chief Hegadus did not observe defendant until a half-hour or an hour after the accident and at least an hour after defendant drank his last beer. The police officer noted that defendant's speech was good and that he did not suspect that alcohol was involved in the accident until he noticed a moderate odor of alcohol while defendant was sitting in his police car over an hour after the accident. The Commonwealth offered no evidence as to defendant's appearance or mannerisms immediately prior to or after the accident, and we are not at all convinced that the officer's observations indicate a driver who was under the influence to a degree rendering him incapable of safe driving at the time the accident occurred.

Futhermore, since defendant's test results were 0.11 percent blood alcohol content over two hours later, we believe the Commonwealth has the burden of relating that test result back to the time of the accident. Chief Hegadus testified that the average individual clears alcohol from his body at the rate of 0.02 percent per hour. Thus, it is the Commonwealth's position that at the time of the accident, defendant's blood alcohol content was at least 0.15 percent. The Commonwealth asks us to assume, however, that defendant's blood alcohol content peaked prior to or at the time of the accident. There is no evidence to support such an assumption. Defendant admits drinking two beers in the half-hour immediately prior to the time of the accident. It is entirely possible, especially when compared with Chief Hegadus' observations an hour after the accident, that defendant had not absorbed much of the alcohol from the beer prior to hitting the pole. We do not believe that defendant's mannerisms when observed by the officer are consistent with a person

whose blood alcohol content is 0.14 percent or 0.15 percent.

We, therefore, cannot find beyond a reasonable doubt that defendant's blood alcohol content while he was operating his vehicle was 0.10 percent or greater. To make such a finding would require us to speculate to a degree not warranted by the evidence. We believe the accident involving defendant's car was caused by defendant falling asleep at the wheel due to his exhaustion from his new work schedule.

Accordingly, we find the defendant innocent of the charge of driving under the influence.

### NONJURY VERDICT

Now, this May 9, 1985, defendant, Michael George Mattis, is found not guilty under subsection (a)(1) and (a)(4) of Vehicle Code §3731.

Costs on the Commonwealth.